## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL D. TURNER, and Demetrio Hernandez, individuals | ) ) ) | |
| Plaintiff | ) ) | |
| | ) ) | No. 05 C 4595 Judge Shadur |
| v. | ) ) | Magistrate Judge Valdez |
| THE SALOON, LTD., an Illinois corporation, Cheryl Gilberg and William Bronner and Mark Braver, Individuals. | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT TO PRECLUDE AFFIRMATIVE DEFENSES ON THE SEX HARASSMENT COUNT

NOW COMES, the Plaintiff, PAUL D. TURNER, ("Turner") by his attorneys,

Carol Coplan Babbitt of the Law Office of Carol Coplan Babbitt and, James X. Bormes,

and in support of its Motion for Summary Judgment in his favor on the Affirmative

Defense raised by the Defendants in Count III of the Second Amended Complaint and to

Preclude Defendants from Raising a Reasonable Care Defense at trial, ("Motion for

Summary Judgment"), states as follows:

## INTRODUCTION

Turner brings this cause of action against the defendants, The SALOON, LTD.,

an Illinois corporation, Cheryl Gilberg, William Bronner and Mark Braver, ("the

Defendants") for his wrongful termination. Turner was a waiter or "server" at the

Saloon, a steakhouse restaurant in Chicago, Cook County, Illinois for approximately five

(5) years when he was terminated. Turner is a qualified individual with a disability, he

sought an accommodation for his disability, he was denied it and he was retaliated

against. Turner also alleges he was sexually harassed by his immediate supervisor, Denise, "Dixie" Lake.  When turner complained of the sexual harassment and failure to provide the requested accommodation, and eventually filed a charge of discrimination against the Defendants, he was terminated. (A copy of the Second Amended Complaint is Attached as Exhibit A hereto.)

Turner's Second Amended Complaint alleges seven (7) theories of liability against the Defendants. Count I and II address the Americans with Disabilities Act  and retaliation thereof, Counts III and IV address Sex Harassment and retaliation for reporting it, and Counts VI (sic V) through VIII allege Fair Labor Standard Act and Illinois Wage Payment and Collection Act claims.  The Second Amended Complaint adds a second named plaintiff, Demetrio Hernandez but plaintiff's counsel successfully sought to withdraw as counsel for Hernandez on or about February 27, 2007 and, therefore, his claims will not be addressed in this Motion for Summary Judgment.

The parties have completed extensive discovery including document productions and numerous depositions. Turner believes that there is a genuine issue of material fact as to all counts pleaded in his Second Amended Complaint. But with respect to Count III, Turner believes that he is entitled to summary judgment on the only stated Affirmative Defense to that Count, the Statute of Limitations Defense.  Further, because Turner was sexually harassment by his immediate supervisor and the Defendants had no written sexual harassment policy nor did they train the Saloon managers on sex harassment, Turner is entitled to summary judgment that Defendants did not use  "reasonable care" as espoused in *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998) and *Burlington Industries, Inc., v. Ellerth*, 118, S. Ct. 2257 (1998).

Thus, this Motion for Summary Judgment seeks merely to preclude Defendants' stated and potential affirmative defenses at trial. Awarding Plaintiff his relief in this Motion means if Turner proves he was sexually harassed at trial, he has proven Count III of the Second Amended Complaint.

## FACTS PERTINENT TO THIS MOTION FOR SUMMARY JUDGMENT

Turner was a waiter at the Saloon restaurant from in or about December of 1999 to and including December 14, 2004, when he was unlawfully terminated. While Turner was employed at the Saloon he exhibited above-average skill at his job and he consistently grossed one of the highest in the restaurant. (Statement of Uncontested Facts ("Facts", pars. 1-3) Turner's troubles began after he ended a consensual sexual relationship with his immediate supervisor, the front floor manager named Denise, "Dixie" Lake. (Facts, par. 13) All parties to this action universally agree Lake directly supervised Turner from the time of his employment to the date of termination. (Facts, pars, 12, 32)

At all relevant times and for the entire time Turner was employed at the Saloon, the Saloon had no written policy against sex harassment and conducted no training of any kind concerning a manager's responsibilities when faced with a complaint of sexual harassment. Thus, all of Turner's supervisors, including Lake, the woman he accuses of sexually harassing him, had no training on how to properly handle a complaint of sexual harassment during the time Turner was employed at the Saloon. Lake never even knew the Saloon prohibited sex harassment in the workplace until after Turner complained of sexual harassment. (Facts pars. 4-8)

The General Manager of the restaurant, Mark Braver's knowledge of a sex harassment policy was "common sense." William Bronner, the Owner's Representative

and the person who made policy for the Saloon for the entire time Turner was employed there, knew there was no written sex harassment policy and never suggested one be implemented at the Saloon. (Facts pars. 5-9)

From in or about the fall of 2002, through the last date of Turner's employment, Turner was sexually harassed by Lake. The harassment was pervasive and poisoned the environment for Turner.  The Harassment was serious and came in the form of disparate treatment of Turner in Lake's discipline of Turner, in the way in which she assigned him tables or assigned customers to him, in her verbal sexual advances towards Turner and in the numerous instances of unwanted, offensive acts of touching Turner on his body in sexually explicit areas with her own body and with her own sexually explicit body parts. (Facts, pars. 14-25)

Lake herself was an unstable woman. She would constantly vascilate between trying to charm Turner back into a relationship with her and treating him with anger and disdain. (Facts, pars. 14-18, 24-25) Turner can point to five (5) specific instances where Lake offensively touched and/or approached Turner sexually at work causing him stress and making his environment offensive. (Facts, pars. 19-23)

Turner made his best efforts to push Lake away but Lake would not listen. Turner threatened to go to management and tell them about what she was doing and she threatened Turner by telling him he couldn't go to management because they would both lose their jobs if he did. Finally, after the harassment did not cease, Turner realized he would have to go to management to stop it. (Facts, pars. 13-17) In or about July of 2003 he went to the General Manager and complained Lake was sexually harassing him. Braver did absolutely nothing to assist Turner's plight. In fact, he went so far as to make fun of Turner's complaints of harassment. He even discouraged Turner from going to the

top, or telling the Owner's Representative, Bill Bronner about the problem unless he wanted repercussions for himself and Lake. (Facts, pars 26-29)

After his first meeting with Braver, Turner was discouraged and more frightened against pursuing his claim of harassment. So he tried to see if it would go away. It did not go away. (Facts, par. 28) The sex harassment continued against him by Lake. He was not given proper seating assignments, he was unnecessarily disciplined facing suspensions and more write-ups by Lake. In or about the spring of 2004, Turner decided he needed to complain of sexual harassment to Bill Bronner. Turner approached Bill Bronner and they had a meeting. At the meeting Turner informed Bronner about all the incidents of sexual harassment. Bronner promised to investigate and he ensured Turner the harassment would not continue. (Facts, 35-44)

Bronner alleges he spoke with other employees about Turner's allegation but he never spoke to Turner further about it and he never even concluded whether or not sexual harassment occurred. No one was disciplined as a result of any investigation and although Bronner assured Turner he would monitor the situation, he did not and the sexual harassment continued. Turner complained to Braver in or about October of 2004, that the harassment had not stopped, the barrage of write-ups continued against him and the unwanted touching but Braver ignored Turner. (Facts, pars., 32-29)

On or about December 14, 2004, after numerous unsuccessful attempts to quell the sexual harassment, Turner was terminated as a direct result of the numerous write-ups in his personnel file. (Turner par. 50) The defendants never disciplined Lake nor have they ever told her not to date the employees she supervises. Braver was never disciplined for failing to conduct an immediate investigation in 2003 when Turner first came to him

to complain, and Turner was never given an explanation as to the results of any alleged investigation. (Facts pars. 7, 42, 45)

## **ARGUMENT**

In Count III of the Second Amended Complaint Turner alleges he was sexually harassed by his female supervisor, Lake, from in or about November of 2002, to and including his termination date of December 14, 2004. (Exhibit A, pars, 26-37) Turner believes his allegations of sexual harassment are severe and pervasive enough to constitute sexual harassment within the meaning of Title VII. *See Meritor v. Vinson*, 477 U.S. 53, 60 (1986). But Turner will not attempt to prove his claims of Sexual harassment by way of this Motion for Summary Judgment, believing a genuine issue of fact remains on this issue.

However, there is no genuine issue of material fact that defendant's Statute of limitations affirmative defense and the reasonable care defense cannot be applied in this case, Turner seeks judgment in his favor now on those defenses. Defendants raise only one (1) affirmative defense to counter Turner's claims of sexual harassment, a Statute of Limitations defense. But all Turner's allegations of sexual harassment are linked together and all are necessary to prove the harassment was pervasive enough to constitute harassment under Title VII, thus, there is no genuine issue of material fact precluding judgment in Turner's favor on the Statute of Limitations defense.

Additionally, Defendants do not raise a "reasonable care" defense in it's present pleading but they should forever be precluded from asserting this defense because Defendants have met none of the three (3) elements of this defense. Turner was supervised by the individual accusing him of sexual harassment, defendants had no written policy on sexual harassment, took no steps to train its managers, and defendants

failed to swiftly conduct a meaningful investigation. Therefore, there is no genuine issue of material fact precluding the entry of judgment in Turner's favor that defendants failed in their duty of care as prescribed in *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998) and *Burlington Industries, Inc., v. Ellerth*,

I.      **DEFENDANTS' STATUTE OF LIMITATIONS DEFENSE FAILS BECAUSE ALL OF TURNER'S ALLEGATIONS OF SEXUAL HARASSMENT ARE LINKED TOGETHER AS A CONTINUING VIOLATION.**

Defendants have asserted the statute of limitations defense to counter Turner's allegations of sexual harassment in Count III. (See Exhibit 4) But even assuming the facts in the light most favorable to Defendants for purposes of their defense, all the alleged acts of sexual harassment amount to a continuing violation such that they all are deemed timely. Additionally, Turner complained and relied on his employer's assurances there would be no more harassment which tolled the limitations period again making all acts complained of timely.

It is well-established Title VII law that a plaintiff may recover for discriminatory acts beyond the limitations period if he or she can demonstrate that such acts were part of a continuing violation. *Jones v. Merhcants National Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994). In finding a continuing violation the courts look at many factors such as frequency of the acts, duration of the acts, severity of the acts and when it was reasonable to assert assistance by the plaintiff. *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999).

Where the series of acts leading plaintiff to believe he or she was discriminated against are not definite in date, waver in severity and finally, with hindsight put the plaintiff on notice that his or her rights have been violated, this constitutes a continuing violation and all of the acts are deemed timely. *Freeman v. Madison Metropolitan School*

*District*, 231 F.3d 374 (7th Cir. 2000),(Court reversed trial court's ruling that certain acts were barred by the statute of limitations where the defendant's actions in communicating back and forth with plaintiff in an ambiguous way about his disability, prolonged the statute of limitations and constituted a continuing violation.)

Where a plaintiff complains of harassment to his or her employer and the employer leads the plaintiff to believe the harassment will stop, the statute of limitations tolls not requiring plaintiff to file until the employer's actions stopped. *Frazier v. Delco Electronics Corp.,* 263 F.3d 663 (7th Cir. 2001), (Plaintiff's employer's assurances it would rectify the harassment coupled with actions in separating plaintiff from the harasser but then moving him back to her transferred position, tolled the statute of limitations until after the employer ceased acting.)

Here, just as in *Freeman* and *Fazier*, the individual acts of harassment toward Turner were isolated and continual. Lake acted inconsistently at times going from anger to extreme kindness and then she'd harass plaintiff again. She'd stalk him and watch him in the restaurant and then she'd try to turn on the charm to get him to acquiesce. (Facts, pars. 14-25, 46-48)

Turner felt a constant threat from Lake and he suffered a constant but inconsistent series of unwanted touching as well as severe treatment in discipline. (Facts, pars. 14-25, 46-48) When Turner realized he needed to report the harassment he did. His employer assured him they would investigate it. Turner begged for Defendants to help him stop the erratic, harassing, behavior and they promised him they would but they never did. (Facts, pars. 26, 34, 39-50)

Any delay by Turner in initially reporting the harassment is tempered by the threats he received form Lake, his direct supervisor, and the person sexually harassing

him, that they would both be fired if he went to management. (Facts, par. 17) Also, the General Manager, Mark Braver, advised Turner to avoid complaining of Lake's sexual harassment to the Owner's Representative. (Facts, par. 27) These types of threats, especially from those supervising him are valid and assist in demonstrating Turner's allegations are timely. *Johnson v. Togo West, Jr. et al*, 218 F.3d 725 (7th Cir. 2000).

Thus, there was a series of ongoing but indefinite uncomfortable, harassing acts towards plaintiff that upon their continuance rose to the level of harassment. Turner complained to his employer and the statute of limitations was tolled by the employer's empty promise they would make sure it stopped. It never stopped and plaintiff was eventually terminated because of the harassment.

There is no genuine issue of material fact that all of the acts complained of were timely as they constituted a continuing violation. Defendants own actions tolled the statute of limitations and now the employer should be summarily precluded from utilizing this defense against plaintiff. *Frazier v. Delco Electronics Corp.,* 263 F.3d 663 (7th Cir. 2001)

## II. DEFENDANTS ARE STRICTLY LIABLE TO PLAINTIFF BECAUSE PLAINTIFF'S IMMEDIATE SUPERVISOR WAS THE HARASSER AND DEFENDANTS CANNOT CLAIM A REASONABLE CARE DEFENSE.

The seventh Circuit has clearly established that if the plaintiff establishes sexual harassment, and the harasser is a supervisor, (or one level directly above the plaintiff), the employer is strictly liable for the harassment. *Ellerth, supra,. Hall v. Bodine*, 276 F.3d 345 (7th Cir. 2002). In these situations, an employer's only legal defense is to prove by a preponderance of evidence that, 1) it took reasonable care to prevent harassment; 2) it took reasonable care to promptly correct any harassing behavior; and 3) the employee

9

unreasonably failed to take advantage of any protective or corrective opportunities provided by the employer or to avoid harm. *Ellerth*, *supra, Faragher, supra*. In order to defend, an employer must prove all three of these elements or the reasonable care defense is eliminated. *Ellerth*, 524 U.S. at 765, *Faragher*, 524 U.S. at 807.

The defendant bears the burden proof on each element of the reasonable care defense set out in *Ellerth* and *Faragher*. S*uders v. Pennsylvania State Police*, 124 S. Ct. 2342, 2354 (2004). Taking the facts and pleadings in this case in the light most favorable to Defendants, it is impossible for defendants to avoid strict liability in this case because; 1) Lake was Turner's immediate supervisor, 2) Defendants answered the Second Amended Complaint admitting they have no sex harassment policy or training and 3) Turner tried seek assistance from his employers but, they all failed to assist him.

The first element is clearly established by unanimous testimony that Turner was a server at the Saloon, Lake was a "front floor manager" assigned to supervising servers, and Turner was directly supervised by Lake from the time he was first employed at the Saloon to the time he was terminated on or about December 14, 2007. (Facts, pars, 10, 45) Lake admits she had the sole and exclusive power to issue disciplinary action reports against Turner and the General Manager, Mark Braver admits he terminated Turner on December 14, 2004, because of the many disciplinary write-ups in Turner's file. (Facts, pars. 11-12) There can be no genuine issue of material fact that Lake was sufficiently superior to Turner to constitute his supervisor for purposes of imposing strict liability on defendants. *Gawley v. Indiana University*, 276 F.3d 301 (7th Cir. 2001)

There is a plethora of material facts demonstrating the second element, that Defendants cannot show they exercised reasonable care to either prevent or correct harassment in this case. Defendants had no written sex harassment policy, they made no

attempt to train its managers, they never conducted a meaningful investigation, they

never separated plaintiff from Lake and they failed to take further corrective action even

after Turner repeatedly complained that Lake's harassment continued.  The following

specific facts show defendants failed to reasonably care to stop the harassment:

1.      During the time Turner was employed by Defendants, Defendants had no written policy of sex harassment and they made no attempt to train its managers on prevention or correcting claims of harassment (Facts pars. 4-5);

2.      During the time Turner was employed by Defendants, Lake was never advised not to date the employees she supervised (Facts, par. 7);

3.      Lake admits that the first time she knew sexual harassment was not allowed at the restaurant was after Turner complained she was sexually harassing him.(Facts, par. 8)

4.      During the time Turner was employed at the Saloon, when he first complained to the  General Manager he was being harassed, he was advised against going any further with the allegations and the General Manager refused to investigate.  The General Manager was never disciplined for failing to immediately report the allegations to the Owners or Owners representative (Facts, pars. 26-29, 30) ;

5.      After Turner's second complaint Defendants' Owner Representative never came to a final conclusion as to whether or not sexual harassment occurred, and he never had a follow up meeting with Turner (Facts pars. 39);

6.      The Defendants imposed a no writing-no further assistance rule on Turner's allegations of sex harassment requiring Turner to either give them something in writing or they would refuse to go any further with the allegations (Facts par. 39);

7.      Defendants failed to discipline Lake, and allowed her unfettered discretion in issuing disciplinary write-ups against Turner (Facts,32-33)

8.      Defendants never stopped Lake from supervising Turner nor would they change Turner's schedule so he was supervised by another manager (Facts par. 32);

9.      Turner complained to the General Manager, a second time,  in or about October of 2004 after Bronner failed to stop the sexual harassment, but Braver took no steps to reduce Lake's power over Turner or to stop the harassment (Turner pars. 43-44, 49);

10.     Braver relied on Lake's disciplinary action reports against Turner in his decision to terminate Turner. (Facts pars. 48,50);

11.      Lake was never disciplined for her actions and remains an employee at the restaurant today (Facts, pars. 45).

The lack of a valid policy and training can actually in and of itself totally prevent

the employer from asserting the reasonable care defense. *Faragher,* 524 U.S. at 808.

*Hollis v. City of Buffalo*, 28 F.Supp.2d 812, 821 (W.D.N.Y. 1998), *Miller v. Woodharbor Molding,* 80 F.Supp.2d 1026, 1030-1(N.D.Ia.2000).  Defendants own pleading admits it failed to have a policy or train its managers on sex harassment. (Exhibit 4 par. 31) Moreover, the managers unanimously confirm that by admitting there was no written policy and they never were trained on any anti-harassment policy.  (Facts, par. 4) This alone should be sufficient to conclude strict liability against Defendants if Turner proves sexual harassment occurred at trial.

But here, the Defendants' brazen disregard for the law is demonstrated by more than just failure to have a policy or train its managers. Its supervisors had absolutely no idea how to conduct an appropriate investigation and botched it from the start. The General Manager not only discouraged Turner from pursuing the investigative process, but he teased Turner about his allegations. (Facts, pars. 27, 31) Lake, the woman Turner accuses of sexually harassing him, did not even know sexual harassment was not allowed at the Saloon until after Turner complained of sexual harassment. (Facts, par. 8) The Owner's representative never concluded his alleged investigation, never continued to monitor the sex harassment and the General Manager never followed up with Turner on his complaints or even bothered to discuss it with the Owner's Representative. (Facts, pars. 6, 27-50)

The alleged investigation was a sham here and Defendants must be strictly liable to Turner for their complete failure to show reasonable care. *Ellerth*, *see also, Wilson v. Chrystler Corp*, 172 F.3d 500 (7th Cir. 1999), (An employer must adequately respond to the allegations of harassment and conduct an adequate investigation with appropriate discipline against those responsible, showing this was inadequate demonstrates a *prima facia* case of liability.)

Turner acted reasonably.  He attempted to stop Lake himself from harassing him, he reported the harassment to two managers and he waited for Defendants to stop the harassment for him. (Facts pars. 27, 34-5) Too bad his employer did not act with reasonable care to stop his immediate supervisor from harassing him and allowed her to directly cause his termination. For that they should be held strictly liable.

## **CONSCLUSION**

For the foregoing reasons this court should award judgment as a matter of law on the statute of limitations defense against Count III of the Second Amended Complaint and further, it should deem Defendants strictly liable in the face of Turner's proof at trial of harassment, thus, narrowing the issues for trial.


PAUL D. TURNER

_____//s//*Carol Coplan Babbitt*_____
BY: One of his attorneys



*Carol Coplan Babbitt*
*The Law Office of Carol Coplan Babbitt*
*542 South Dearborn Street – Suite 1010*
*Chicago, Illinois  60605*
*Telephone:  (312) 435-9775*
*Attorney Number: 6199651*