UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL D. TURNER, )
)
        Plaintiff, ) No. 05 C 4595
)
v. )
) Judge Ruben Castillo
THE SALOON, LTD., CHERYL GILBERG, )
WILLIAM BRONNER, and MARK BRAVER, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Paul Turner ("Turner") filed a seven-count complaint against his former employer The Saloon, Ltd. ("Saloon") and certain owners and members of management (collectively, "Defendants"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Title VII of the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.* (R. 38, Second Am. Compl. ¶¶ 11-41.) Further, Turner claims that Saloon violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, and the Illinois Wage Payment Act ("Wage Act"), 820 Ill. Comp. Stat. 105/4. (*Id.* ¶¶ 42-60.) After the district court granted summary judgment in favor of Defendants, Turner appealed. (R. 74, Mem. Op. and Order at 26; R. 78, Notice of Appeal.) On appeal, the Seventh Circuit affirmed the district court's dismissal of Turner's ADA, FLSA, Wage Act, and Title VII retaliation claims.[1] *Turner v. The Saloon*, Ltd., 595 F.3d 679, 691 (7th Cir. 2010). The Seventh Circuit, however, reversed the district court's ruling on Turner's Title VII harassment claim and remanded the case for further proceedings. *Id.*

---

[1] This case was originally before the Honorable Milton I. Shadur. After remand, the case was transferred pursuant to 28 U.S.C. § 294(b). (R. 115, Executive Comm. Order.)

Specifically, the Seventh Circuit instructed the lower court to consider Saloon's ability to assert affirmative defenses under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). *Id.* at 687. Presently before the Court are the parties' cross-motions for summary judgment on the issue of employer liability.[2] (R. 119, Pl.'s Supplemental Br.; R. 125, Defs.' Supplemental Mem.) For the reasons stated below, the motions are denied.

## BACKGROUND[3]

A detailed factual account of the underlying dispute was clearly set forth in the district court's prior opinion and will not be repeated here, except as relevant to the pending motions. *See Turner v. The Saloon, Ltd.*, 491 F. Supp. 2d 753, 758-61 (N.D. Ill. 2007), *aff'd in part, rev'd in part*, 595 F.3d 679 (7th Cir. 2010).

Turner started working as a waiter at Saloon, a Chicago steakhouse, around December 1999. (R. 57, Pl.'s Facts ¶¶ 1-2.) Turner consistently earned more money in tips than any other waiter, due in part to his skillful presentation of Saloon's steak cuts, which many patrons enjoyed so much they specifically asked for Turner to serve them. (*Id.* ¶ 3.)

Saloon's managerial staff comprised several persons. William Bronner ("Bronner") is the Owners' Representative who created and developed operating procedures and reported directly to

---

[2] There are no formal pending motions on the Court's docket. Based on the representations made in the supplemental briefs submitted to address the availability of the *Ellerth/Faragher* defense, the Court will treat these submissions as cross-motions for summary judgment.

[3] The relevant facts have been culled from Turner's Local Rule 56.1 Statement of Facts ("Pl.'s Facts"), Defendants' Local Rule 56.1 Statement of Material Facts ("Defs.' Facts"), and the underlying record.

2

Saloon's owners. (*Id.* ¶ 9.) Mark Braver ("Braver"), who reports to Bronner, has been the general manager of Saloon since April 2002 and has been directly responsible for all of Saloon's daily business activities. (R. 61-2, Defs.' Facts ¶ 5.) Supervisors who report to Braver include Denise "Dixie" Lake ("Lake") and Brett Dresnick ("Dresnick"). (*Id.*) During his time at Saloon, Braver, Dresnick, and Lake were among Turner's supervisors. (*Id.* ¶ 8.) While Turner was employed at Saloon, the Defendants maintained no written sexual harassment policy and did not conduct any training on how to treat allegations of sexual harassment for its managers. (R. 57, Pl.'s Facts ¶ 4.) The record does indicate, however, that Saloon had a verbal sexual harassment policy. (R. 61-8, Bronner Dep., Ex. E at 30-34.)

During 2002, Turner and Lake engaged in a consensual sexual relationship which ended that year. (R. 57, Pl.'s Facts ¶ 13.) Based on the interactions between Lake and Turner after their relationship ended, Turner claims that Lake sexually harassed him on the job. (R. 61-5, Turner Dep., Ex. C at 118-19.) Turner believes Lake started unfairly disciplining him, altering his table assignments, and making inappropriate physical contact with him. (*Id.* at 118-19, 167-68.) According to Turner, Lake's harassment continued from the end of their relationship in 2002 until his termination in 2004. (*Id.* at 119, 167.) Lake denies that she treated Turner any differently from other members of the wait staff and also rejects Turner's claim that she touched or spoke to him inappropriately. (R. 61-13, Lake Dep., Ex. J at 47, 56-63.)

Turner describes several specific instances of overt sexual harassment. In June 2003, Turner claims that a customer spilled champagne on the midsection of his pants. (R. 61-5, Turner Dep., Ex. C at 121-22.) Upon arriving at the service bar area, he commented that a customer had spilled a drink on him and that he was "soaked." (*Id.*) Turner contends that Lake

3

then reached inside his pocket, grabbed his penis, and said "You sure are." (*Id.*) About a month later, Turner claims that Lake walked up behind him, pressed her chest against him, and asked, "Did you miss me?" (*Id.* at 123-25.)

Turner contends that shortly after this second incident, he approached Braver to speak with him about Lake's conduct. (*Id.* at 135.) During this conversation, Turner revealed his sexual relationship with Lake and expressed his discomfort with Lake's actions. (*Id.* at 137.) According to Turner, Braver told him that his "hands were tied," but that he would "gladly" arrange a meeting with Bronner. (*Id.* at 138-39.) Turner maintains that Braver discouraged approaching Bronner with this issue because "it would make the situation worse." (*Id.* at 139.) Turner also states that after revealing this information, Braver "made fun of" the allegations. (*Id.* at 147-49.)

In his deposition, Braver stated that it was during this conversation that Turner revealed his prior relationship with Lake, along with the allegations of unfair treatment to which he was allegedly being subjected. (R. 61-7, Braver Dep., Ex. D at 123.) Although Braver recalled telling Turner that his allegations were "very serious" and that he preferred to investigate them by questioning Lake and other employees, he states that Turner "begged [him] not to look into it." (*Id.* at 124-26.) Based on Turner's plea that he not formally investigate the allegations, Braver stated that he did not conduct a formal investigation. (*Id.*) Braver did, however, looked at the disciplinary actions that Turner had received from Lake and decided that she had not "disciplined him any more or any more harshly than any other managers for similar things or any other employees." (*Id.* at 125.) During this conversation, Braver recalls telling Turner that he could come to him to initiate a formal investigation if the situation did not improve. (*Id.* at 126.)

4

Turner maintains that additional instances of overt sexual harassment took place after this conversation. For instance, Turner claims that on New Year's Eve in 2003, Lake asked him to kiss her. (R. 61-5, Turner Dep., Ex. C at 127.) In January 2004, Turner states that Lake approached him and touched his buttocks. (*Id.* at 128.)

In the spring of 2004, Turner decided to communicate his allegations to Bronner. (*Id.* at 152.) A meeting between Turner, Bronner, and Braver subsequently took place. (R. 61-6, Turner Dep., Ex. C at 154.) During this meeting, Turner told Bronner that he felt Lake was treating him unfairly; he also told him about the unwanted physical contact. (*Id.*; R. 61-8, Bronner Dep., Ex. E at 53.) Bronner states that he told Turner that he took the allegations very seriously and would investigate them further. (R. 61-8, Bronner Dep., Ex. E at 54.) Despite his allegations against Lake, Turner claims that Saloon never offered to have someone besides Lake supervise him. (R. 61-5, Turner Dep., Ex. C at 366.)

After this meeting, Bronner and Braver met with Lake and informed her of Turner's allegations. (R. 61-2, Defs.' Facts ¶ 53.) During this meeting, Lake denied Turner's allegations. (*Id.*) According to Bronner, he continued his investigation by interviewing Corey Shoemaker ("Shoemaker"), Saloon's Executive Chef, Dresnick, Braver, and several servers and a couple bartenders. (R. 61-8, Bronner Dep., Ex. E at 57-62.) Bronner claims these individuals indicated that they had not observed Lake engage in any inappropriate actions. (*Id.*)

Bronner also states that he arranged a meeting between himself, Turner, and Lake. (*Id.* at 63.) He testifies that during this meeting, he asked Turner and Lake to "explain their positions." (*Id.* at 64.) After both presented their sides of the story, Bronner states that he told them that he hoped they could work together, to stay away from each other physically, and that he would

5

continue to monitor the situation. (*Id.* at 64-65.) Both Turner and Lake do not recall whether this meeting actually took place. (R. 61-6, Turner Dep., Ex. C at 366; R. 61-13, Lake Dep., Ex. J at 54-55.)

According to Bronner, he continued to monitor the situation between Turner and Lake after this meeting. (R. 61-8, Bronner Dep., Ex. E at 69.) In his deposition, he testified that he had separate conversations with Turner and Lake, both of which revealed no problems between the two. (*Id.* at 69-72.) Bronner did not arrive at a conclusion as to whether Lake sexually harassed Turner. (*Id.* at 67.)

In addition to the previously mentioned incidents, Turner claims that the harassment continued after his meeting with Bronner and Braver. (R. 61-5, Turner Dep., Ex. C at 129.) Specifically, Turner recalls an incident which occurred in August 2004. (*Id.*) According to Turner, while he was in the employee area changing into his uniform for his shift, Lake watched him change and commented that she "missed seeing [him]" naked. (R. 61-5, Turner Dep., Ex. C at 130.)

Turner was terminated on December 15, 2004. (R. 61-7, Braver Dep., Ex. D at 107.)

## PROCEDURAL HISTORY

Turner initiated this suit on August 11, 2005. (R. 1, Compl.) In the spring of 2007, both parties filed motions for summary judgment. (R. 55, Pl.'s Mot.; R. 63, Defs.' Mot.) The district court subsequently granted Defendants' motion for summary judgment, and denied Turner's motion as moot. (R. 74, Mem. Op. and Order at 26; R. 76, Mem. Op. and Order at 6.) Turner subsequently appealed the rulings. (R. 78, Notice of Appeal.)

On appeal, the Seventh Circuit affirmed in part, and reversed in part, the district court's

decision. *Turner*, 595 F.3d at 691. Of specific importance here, the Seventh Circuit found that the district court erred in determining that most of Lake's alleged acts of sexual harassment were time-barred under Title VII's statute of limitations. *Id.* at 684-85. In rejecting the district court's approach to Turner's Title VII hostile work environment claim, the court found that consideration of all Lake's alleged conduct generated enough evidence for a reasonable jury to conclude that her acts were "severe or pervasive enough to create a hostile work environment." *Id.* at 684-85, 687. After arriving at this conclusion, the court went on to indicate that, on remand, the district court is to consider whether there is a basis for employer liability and, specifically, the availability of an *Ellerth/Faragher* defense. *Id.* at 687.

Upon remand, Turner filed a motion for leave to file a supplemental brief addressing the issue of employer liability. (R. 110, Pl.'s Mot. for Leave to File Supplemental Br.) The district court granted the motion, and provided Defendants an opportunity to address the same issue. (R. 114, Min. Entry.) Presently before the Court are what the parties style as cross-motions for summary judgment. (R. 119, Pl.'s Supplemental Br.; R. 125, Defs.' Supplemental Mem.)

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007). "The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on

7

which the jury could reasonably find for the non-moving party." *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences and resolving all doubts in the nonmoving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). On cross-motions for summary judgment, inferences are drawn in favor of the party against whom the motion under consideration was made. *First State Bank v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009).

## ANALYSIS

In *Ellerth* and *Faragher*, the Supreme Court identified the circumstances under which an employer may be held liable under Title VII for the acts of a supervisory employee whose sexual harassment of a subordinate created a hostile work environment amounting to employment discrimination. In this pair of cases, the Court held that where "no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Ellerth*, 524 U.S. at 765. This affirmative defense is available where two requirements are met: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* No affirmative defense is available, however, "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

Turner has moved for summary judgment to prevent Defendants from invoking the

8

*Ellerth/Faragher* defense at trial. (R. 55, Pl.'s Mot. at 1; R. 119 Pl.'s Supplemental Br. at 3.) Defendants, however, argue that the "undisputed evidence shows that the Saloon [has] established an affirmative defense" that prevents it from being held liable for Lake's alleged acts. (R. 125, Defs.' Supplemental Mem. at 11.) In his submissions to the Court, Turner does not argue that Lake's alleged harassment culminated in a tangible employment action. (*See* R. 56, Pl.'s Mem. at 9-13; R. 119, Pl.'s Supplemental Br. at 2-5.) Thus, the question before the Court is whether either party is entitled to summary judgment on the *Ellerth/Faragher* defense.

## I. Employer Reasonable Care

To satisfy the first prong of the *Ellerth/Faragher* defense, a defendant has the burden of showing by a preponderance of the evidence that "it took *both* preventative and corrective steps to address sexual harassment." *Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 846 (7th Cir. 2001) (emphasis added); *see Shaw*, 180 F.3d 806, 811-13 (7th Cir. 1999). Having an antiharassment policy with a complaint procedure is not necessary in every instance as a matter of law to satisfy the first prong of the *Ellerth/Faragher* defense. *E.g.*, *Faragher*, 524 U.S. at 807. For example, as the Supreme Court noted in *Faragher*, such a formal policy may be unnecessary to satisfy the preventative portion of the first prong where the defendant is the "employer of a small workforce, who might expect that sufficient care to prevent tortious could be exercised informally." *Id.* at 808. The presence of an appropriate antiharassment policy, however, will often satisfy both the preventative and corrective portions of the first prong "because Title VII is designed to encourage the creation of [antiharassment] policies and effective grievance mechanisms." *Shaw*, 180 F.3d at 811.

### A. Preventative Steps

Here, Turner appears to argue that he is entitled to summary judgment because Saloon did not have a written sex harassment policy and did not conduct any training on how to treat allegations of sexual harassment for its managers, and thus failed to exercise reasonable care to prevent sexually harassing behavior. (*See* R. 56, Pl.'s Mem. at 10-11.) While the facts Turner highlights are undisputed, they do not support the conclusion that he is entitled to summary judgment. Although it is undisputed that Saloon had no written sexual harassment policy, such a policy is not necessary in every instance as a matter of law to satisfy the first prong of the *Ellerth/Faragher* defense. *E.g.*, *Faragher*, 524 U.S. at 807. Further, finding that Saloon was unreasonable as a matter of law is inappropriate because the record indicates that Saloon had a verbal sexual harassment policy. (R. 61-8, Bronner Dep., Ex. E at 30-34.) Because a jury reasonably could find for either party on the issue of whether the verbal policy alone in this particular context is enough to satisfy the preventative portion of the first prong of the *Ellerth/Faragher* defense, summary judgment is an inappropriate means of resolving this issue. For this reason, both motions for summary judgment on the *Ellerth/Faragher* defense must be denied.

### B. Corrective Steps

In addition to showing reasonable care in preventing sexual harassment, an employer must also exercise reasonable care in responding to sexual harassment. *Shaw*, 180 F.3d at 812. An "employer's response to alleged instances of employee harassment must be reasonably calculated to *prevent future harassment* under the particular facts and circumstances of the case at the time the allegations are made." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir.

2005) (internal quotation marks and citation omitted).

In this case, there are several disputed material facts that preclude the entry of summary judgment for either party. Specifically, the parties provide divergent accounts of facts material to determining the reasonableness of Saloon's response to Turner's allegations of sexual harassment. For example, according to Turner, Braver not only discouraged approaching Bronner, but also "made fun of" his allegations. (R. 61-6, Turner Dep., Ex. C at 139, 147-49.) In contrast, Braver claims that he told Turner that he would take his allegations "very seriously" and that he preferred to formally investigate them, but did not at Turner's behest. (R. 61-7, Braver Dep., Ex. D at 123-26.) Another factual dispute involves whether the meeting between Turner, Lake, and Bronner actually occurred. While Bronner claims that it took place, both Turner and Lake do not remember this meeting. (*Compare* R. 61-8, Bronner Dep., Ex. E at 63 *with* R. 61-6, Turner Dep., Ex. C at 366 *and* R. 61-13, Lake Dep., Ex. J at 54-55.) Given the divergent accounts of material facts regarding the reasonableness of Saloon's response to Turner's allegations, the Court is simply unable to find that either party is entitled to summary judgment on this issue. Accordingly, the factual disputes with respect to the corrective portion of the first prong of the *Ellerth/Faragher* defense provides an additional basis for denying both motions for summary judgment.[4]

## CONCLUSION

For the reasons set forth above, Turner's motion for summary judgment (R. 119) is DENIED. Similarly, Defendants' motion for summary judgment (R. 125) is also DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and exhaust all

---

[4] This conclusion renders any discussion of the second prong of the *Ellerth/Faragher* defense unnecessary.

11

efforts to settle this case. A status hearing will be held on June 29, 2010 at 9:45 a.m. to set a firm trial date for this case.

Entered: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

**Dated:** June 4, 2010